# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 24, 2012

## GLEN CURTIS LETSINGER v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court of Knox County
### No. 94452     Mary Beth Leibowitz, Judge

### No. E2011-01511-CCA-R3-PC - Filed February 9, 2012

Glen Curtis Letsinger ("the Petitioner") filed for post-conviction relief from his conviction of rape of a child and the resulting minimum sentence of fifteen years. He alleges that he received ineffective assistance of counsel in conjunction with his guilty plea and that his plea thereby was rendered constitutionally infirm. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. Upon our careful review of the record, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Criminal Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Glen Curtis Letsinger.

Robert E. Cooper, Jr., Attorney General & Reporter; Cameron L. Hyder, Assistant Attorney General; Randy Nichols, District Attorney General; Steve Sword, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Petitioner pled guilty to one count of rape of a child while represented by counsel ("Trial Counsel"). Pursuant to the plea agreement, the Petitioner was sentenced to the minimum sentence of fifteen years in the Tennessee Department of Correction to be served at one hundred percent. The Petitioner subsequently filed a pro se petition for post-conviction relief. After determining that the petition presented a colorable claim, the post-

conviction court appointed counsel. Counsel filed an amended petition for post-conviction relief, alleging that the Petitioner received ineffective assistance of counsel in conjunction with his plea and that, as a result, his plea was not knowing and voluntary.

At the hearing on the Petitioner's claim, the Petitioner testified that he was then sixty-six years old. He had no trouble reading or writing, having graduated from high school and attended college. After he was arrested on the instant charge, he remained in jail pending disposition of his case. The Petitioner testified that he spoke with Trial Counsel, who was with the Public Defender's office, only a few times and for no more than twenty minutes at a time, while his case was pending. The Petitioner maintained his innocence "the whole time."

The Petitioner acknowledged that Trial Counsel explained the charge to him and told him that the victim and the victim's mother were going to testify. However, the Petitioner had made no statements to the police. When asked why he decided to plead guilty, the Petitioner responded,

> Well, . . . I talked to [Trial Counsel] that night before the trial the next morning. He told me that he refused to defend my charge, that he wasn't taking it to trial, that he thought that I was a liar and I was guilty, that I had no options, no choices but to plead guilty to the crime. I would be protecting my wife by doing so. And also that I was gettin[g] a lesser charge and would probably be out in the next four to five years. At least I would be out of jail while I was still alive. If I went to trial with it he said that he would instruct the jury to find me guilty and convict me, and I'd get 40 years. When he said protecting my wife, that's what stuck in my mind.

The Petitioner stated that he "was ready to go to trial," and did not because Trial Counsel "told [him] that he refused to defend the charge and he wasn't going to take a trial that he couldn't win." The Petitioner added, "I just put my trust in him, and he told me I didn't have any choice or any option but to plead guilty and that's what I did."

When asked if he remembered his guilty plea, the Petitioner replied, "No, not really, I don't." He added, "I was told [by Trial Counsel] to answer [the judge's questions] in the affirmative." Accordingly, he answered "yes" to every question the trial court asked him. The Petitioner concluded his direct testimony by stating, "I just don't feel like I got proper representation for a crime that I hadn't committed."

On cross-examination, the Petitioner acknowledged that it was possible he had additional conversations with Trial Counsel that he did not remember.

Trial Counsel testified that his notes "reflect[ed] that [he and the Petitioner] counseled 20 times" concerning the Petitioner's case. He attempted to speak to the victim but was unsuccessful. He had two extensive interviews with the Petitioner's wife. He listened to phone messages that the Petitioner had left with the victim's mother that "were contemporaneous to the accusations" and in which the Petitioner was "essentially asking for forgiveness, expressing shame, and saying that he was truly, truly, truly sorry for what had happened." Trial Counsel described these messages as "very effective evidence for the State." The Petitioner had also made a statement to another potential prosecution witness in which he admitted to having "been inappropriate toward the child." Trial Counsel filed a motion to exclude this statement, but was unsuccessful. Trial Counsel acknowledged that the Petitioner maintained his innocence. Trial Counsel stated that he explained to the Petitioner that he would have to serve the entire fifteen year sentence offered in the plea bargain.

On cross-examination, Trial Counsel denied calling the Petitioner a liar and denied that he would have told the jury to convict him. He stated that he had been prepared to go to trial. He counseled the Petitioner extensively on two occasions about the plea offer. In his professional judgment, he was confident that the Petitioner would have received a sentence of more than fifteen years if convicted at trial.

After the hearing and after reviewing the transcript of the plea hearing, the post-conviction court denied relief. In its written order, the post-conviction court recited that, when the Petitioner was given the opportunity to speak at the plea hearing, he "made a statement asking for forgiveness and accepting responsibility for his actions." The court also noted that the Petitioner did not object to the plea agreement when given an opportunity to do so by the court at the plea hearing. After reviewing the testimony adduced at the post-conviction hearing, the court determined that Trial Counsel "performed within and above the range of performance required of attorneys in criminal cases." The post-conviction court also found that the Petitioner's testimony that Trial Counsel threatened him was "ludicrous." In sum, the post-conviction court concluded that the Petitioner had failed to demonstrate either that he had received ineffective assistance of counsel or that his plea was constitutionally infirm.

## Analysis

*Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of

the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[1] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106,

---

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

-4-

116 (Tenn. 2006) (quoting <u>Strickland</u>, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

<u>Baxter</u>, 523 S.W.2d at 934-35 (quoting <u>Beasley v. United States</u>, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." <u>Howell v. State</u>, 185 S.W.3d 319, 326 (Tenn. 2006) (citing <u>Strickland</u>, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>State v. Honeycutt</u>, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting <u>Strickland</u>, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. <u>Rhoden v. State</u>, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." <u>Vaughn</u>, 202 S.W.3d at 116 (citing <u>Strickland</u>, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

<u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). <u>See also</u> <u>Calvert v. State</u>, 342 S.W.3d 477, 486 (Tenn. 2011).

Turning to the Petitioner's specific allegations, we first note that the record on appeal does not contain the guilty plea documents or a transcript of the guilty plea hearing. We are therefore precluded from reviewing the Petitioner's plea and assessing the post-conviction court's interpretation of it. See State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993) (holding that failure to include transcript in appellate record precludes appellate review). Rather, we presume that the post-conviction court's ruling on this issue was correct. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) (holding that the trial court's ruling is presumed to be supported by sufficient evidence in absence of adequate record on appeal). As pointed out by the State in its brief, it is the appellant's duty to provide this Court with a record that is sufficient "to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). Issues not supported by the record are waived. See Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

As to the evidence adduced at the post-conviction hearing in support of the Petitioner's allegation that Trial Counsel was ineffective, we note that the descriptions of Trial Counsel's performance differed markedly between the Petitioner and Trial Counsel. The post-conviction court accredited Trial Counsel's credibility over that of the Petitioner, and found specifically that the Petitioner's claim that Trial Counsel had threatened him was "ludicrous." The evidence does not preponderate against the post-conviction court's findings. Moreover, from the limited record before us, we agree with the post-conviction court that the Petitioner has failed to demonstrate by clear and convincing evidence that Trial Counsel's performance was either deficient or that the Petitioner suffered any prejudice from Trial Counsel's assistance. Accordingly, we hold that the Petitioner is not entitled to post-conviction relief.

## Conclusion

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE